UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRMS, LLC,                    :
    Plaintiff,            :
                          :
v.                           :      Case No. 3:05cv974 (JBA)
                          :
North American Flight        :
Services,                    :
    Defendant.            :

### RULING ON DEFENDANT'S MOTION TO DISMISS [Doc. # 29]

Plaintiff BRMS, LLC ("BRMS"), a company that owns and charters commercial aircraft, brought suit against defendant North American Flight Services, Inc. ("North American"), an FAA licensed aviation and avionics repair station, alleging breach of contract, breach of express and implied warranties, negligence, fraud, civil larceny, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), in connection with a contract entered into between the parties for defendant to install upgraded avionics equipment on plaintiff's Ratheon Beechcraft King Air 200 turboprop airplane registered as "N200BR" (the "King Air").  See Complaint [Doc. # 1].  North American now moves to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or alternatively to transfer venue to the Northern District of New York, and to dismiss plaintiff's fraud claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead with specificity as required by Fed. R. Civ. P. 9(b).  See Def.

1

Motion [Doc. # 29].  For the reasons that follow, defendant's
motion will be granted in part and denied in part and this case
will be transferred to the Northern District of New York.

I.   **FACTUAL BACKGROUND**

The allegations in plaintiff's Complaint, which the Court
must accept as true upon defendant's Motion to Dismiss, and the
undisputed facts contained in the submitted affidavits and
declarations, set out the following relevant facts.  Plaintiff is
a Connecticut company that owns and charters commercial aircraft
with its principal place of business in Greenwich.  Complaint ¶¶
6-7.  Defendant is a New York corporation and an FAA-licensed
aviation and avionics repair station making general aircraft
repairs and repairing, installing, modifying, and updating
aircraft avionics equipment, with its principal place of business
in Ballston Spa, New York.  Id. ¶¶ 8-9.  Defendant is not
authorized to do business in Connecticut, and has no offices
there, Luttrell Decl. [Doc. # 29-9] ¶¶ 4-5, however plaintiff
notes that "FAA regulations permit licensed technicians to
perform work on an aircraft at any location, regardless of the
location of their primary licensed facility," Pl. Opp. [Doc. #
35] at 8 n.4.

Prior to 2005, the FAA promulgated regulations requiring
avionics upgrades on certain types of aircraft by March 29, 2005.
Complaint ¶ 13.  As a result, in February 2005, plaintiff

2

contacted defendant by telephone and requested an estimate to perform updates on the avionics equipment on plaintiff's King Air aircraft. Luttrell Decl. ¶ 6. Defendant provided a quote to plaintiff which stated "[t]his quote is only good through 31 March 2005. Company policy is 50% down, with balance due on delivery of aircraft," see Signed Quote [Doc. # 37-2, Ex. C], which BRMS's Bruce M. Rose executed in Greenwich, Connecticut and sent back to defendant in New York via facsimile on February 12, 2005. Complaint ¶ 14; Rose Aff. [Doc. # 37-1] ¶ 25. On February 22, 2005, Rose gave instructions to his Connecticut bank to wire $30,000 to defendant's New York bank as the 50% deposit. Luttrell Decl. ¶ 8; Rose Aff. ¶ 25 n.3.

Plaintiff's King Air is registered under plaintiff's Greenwich Connecticut address, see Rose Aff. ¶ 10 & Ex. B, and "is occasionally hangared at the Westchester County Airport in White Plains, New York, [but] is also frequently hangared at airports throughout the northeast," id. ¶ 11. Defendant has submitted pages from BRMS's website, which state "[w]e specialize in Beechcraft King Airs out of the Westchester County Airport in New York," and "[b]ased in White Plains, New York's Westchester County Airport at Panorama Flight Services, flights for up to eight passengers to Maine, Boston, Martha's Vineyard and Nantucket Islands, the Hamptons, Rochester and Washington DC are our regular routes," and which provide a White Plains, New York

3

address and telephone number for "flight scheduling, quotes and aircraft information."  See "BRMS, LLC" [Doc. # 29-7] at 1, 3-4.

On March 9, 2005, plaintiff delivered the King Air to defendant at defendant's facility in upstate New York.  Complaint ¶ 21.  Defendant then "performed a full functional review of the aircraft, including a review of the original avionics and autopilot," finding "no deficiencies," and defendant "indicated to [plaintiff] that the aircraft was completely 'airworthy.'"  Id. ¶ 24.  Over the next three weeks, defendant proceeded to remove the old avionics equipment and install new equipment, id. ¶ 26, and during function testing in the first week of April, the autopilot on the aircraft failed to engage, id. ¶ 27.  Defendant suggested removing components of the equipment and shipping them to a third party for an "overhaul," and although plaintiff requested that an evaluation be conducted prior to any overhaul, defendant "unilaterally" instructed the third party to overhaul the components, which defendant then installed in the aircraft. Id. ¶¶ 28-30.  After defendant charged plaintiff for the cost of removing and replacing the components, the autopilot still would not engage, and defendant repaired "shorted wires" in the aircraft, which defendant claimed were preexisting, and charged plaintiff for that work as well.  Id. ¶¶ 31-35.

On April 25, 2005, two BRMS pilots visited the North American facility and determined on a test flight that the

autopilot was still not engaging, and thus returned the aircraft
to North American.  Id. ¶ 36.  After three additional days of
work, defendant notified plaintiff that the King Air "had been
satisfactorily tested and was available to return to service."
Id. ¶ 37.  On April 28, 2005, two BRMS pilots picked up the
aircraft in New York and flew it to Oxford, Connecticut, for
completion of other unrelated work.  Id. ¶ 39-40.  On this
flight, the pilots found that "although the autopilot 'engaged,'
the autopilot and flight director still did not function
properly."  Id. ¶ 39.  Two North American technicians traveled to
Oxford, Connecticut to work on the aircraft, but "immediately
upon arrival at Oxford, the North American technicians . . .
removed various components of the autopilot, including operable
components . . . , effectively disabling the aircraft."  Id. ¶
41.  Defendant contends that it forwarded the components to a
third party for repairs, but did not provide "tear down reports"
or "serviceable tags" for the components as required by FAA
regulations, and thereafter demanded payment from plaintiff for
the "completed installation," refusing to return the components
until payment was received.  Id. ¶¶ 43-44.  At the time the
Complaint was filed, plaintiff had made payment to defendant
under protest and the King Air still had a non-functioning
autopilot and flight director.  Id. ¶¶ 45, 47.

## II.  DISCUSSION

Defendants challenge personal jurisdiction and venue, seeking dismissal under Fed. R. Civ. P. 12(b)(2) or (b)(3). "'However, this Court need not resolve them, since it has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in this district, if a transfer would be in the interest of justice.'" Sutton v. Rehtmeyer Design Co., 114 F. Supp. 2d 46, 49 (D. Conn. 2002) (quoting Volk Corp. v. Art-Pak Clip Art Serv., 432 F. Supp. 1179, 1181 & nn.4-5 (S.D.N.Y. 1977), and citing Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978) (adopting statement of law in Volk)).

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Defendant seeks to have this action transferred to the Northern District of New York, contending that New York is the center of gravity of this dispute and that thus both convenience and the interest of justice favor adjudication in that forum over Connecticut. "[Section 1404(a)] is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)

6

(quotation omitted).  Factors to be considered in determining
whether a § 1404(a) transfer is warranted include the locus of
operative factors, plaintiff's choice of forum, the convenience
of the parties and witnesses, availability of process to compel
unwilling witnesses to testify, location of the relevant
documents, relative means of the parties, the forum's familiarity
with the governing law, and the interest of justice.  See U.S.
Surgical Corp. v. Imagyn Med. Techs., Inc., 25 F. Supp. 2d 40, 46
(D. Conn. 1998).  As movants, the burden is on defendants to
demonstrate that transfer is justified.  Id. (citing Filmline
(Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d
513, 521 (2d Cir. 1989)).

A case may be transferred to any venue where it could have
been brought initially.  See Hoffman v. Blaski, 363 U.S. 335,
343-44 (1960).  Because defendant in this case is a New York
corporation and has its principal place of business in Ballston
Spa, New York, defendant is subject to personal jurisdiction in
New York and venue would be proper in the Northern District of
New York.  See 28 U.S.C. § 1391(a)(1).[1]

A.    Locus of Operative Facts

"The location of operative facts underlying a claim is a key

_____

[1] Venue would also be proper in the Northern District of New
York under § 1391(a)(2) because a substantial part of the events
giving rise to the claims alleged in plaintiff's Complaint took
place in New York, at defendant's place of business.

factor in determining a motion to transfer venue." <u>Charter Oak
Fire Ins. Co. v. Broan-Nutone, L.L.C.</u>, 294 F. Supp. 2d 218, 220
(D. Conn. 2003).  "To determine the locus of operative facts, a
court must look to the site of the events from which the claim
arises." <u>Id</u>. at 220 (quotation omitted).

Here, although a few events took place in Connecticut –
including plaintiff executing the service contract in its
Greenwich Connecticut offices, and a visit by defendant's
technicians to inspect the King Air in Oxford Connecticut, the
majority of events from which this dispute arises took place in
New York: the contract was to be performed in New York; plaintiff
delivered the King Air to defendant's facilities in New York for
service; and defendant performed the work allegedly resulting in
a breach of contract and damage to the King Air's autopilot
system in New York.  Additionally, the King Air is chartered, at
least some of the time, out of an airport in Westchester, New
York.  Thus, because the center of gravity of this litigation is
in New York, this factor favors strongly in favor of transfer.

B.   Plaintiff's Choice of Forum

The plaintiff's choice of forum is generally given
considerable weight.  <u>See</u> <u>In re Warrick</u>, 70 F.3d 736, 741 (2d
Cir. 1995); <u>Charter Oak</u>, 294 F. Supp. 2d at 219.  However, that
choice is not controlling "where the case's operative facts have
little connection with the chosen forum." <u>Charter Oak</u>, 294 F.

Supp. 2d at 220 (quotation omitted).  Here, the action's only
connections with Connecticut are that plaintiff resides here
(although its King Air is at least occasionally chartered out of
a New York airport), the contract was signed by plaintiff here,
defendant visited the King Air in Connecticut <u>after</u> the autopilot
was already damaged and allegedly removed components of the
autopilot system, and communications were had between plaintiff
in Connecticut and defendant in New York.  However, with the
locus of operative facts in upstate New York, including almost
all of the allegedly tortious conduct, <u>i.e.</u> work on plaintiff's
King Air, having been performed in New York, plaintiff's choice
of forum is entitled to less weight.

        C.   <u>Convenience of Parties and Witnesses</u>

     The convenience of witnesses, especially non-party
witnesses, is [t]he single most important factor" in a § 1404(a)
motion to transfer.  <u>See</u> <u>Sutton</u>, 114 F. Supp. 2d at 50.
Defendant notes that all of its witnesses are located in New
York, including its two technicians who worked on the King Air,
employees of another aircraft maintenance company that also
performed work on the King Air at defendant's request which is
located in Ithaca, New York, potential witnesses based at the
Westchester airport out of which the King Air is at least
occasionally chartered, and a non-party pilot located in Albany,
New York, David Harris, who flew the King Air prior to any North

                              9

American work on the aircraft and purportedly noted problems with
its autopilot and also allegedly has "information concerning
admissions made by Harold Rhodes, a BRMS employee, concerning
problems with the autopilot."  Def. Mem. at 20; Luttrell Decl. ¶
15.  Plaintiff claims that all of its witnesses are located in
Connecticut, including claimed non-party witnesses "to the
conduct of [defendant] in Connecticut."  Pl. Opp. at 21.

While "[i]n a motion to transfer, a court does not seek
merely to transfer inconvenience from one party to the other,"
Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc., 821 F. Supp.
848, 850 (D. Conn. 1993), in this case the convenience of
witnesses weighs in favor of transfer.  Taking into account that
"it is not the prospective number of witnesses in each district
that determines the appropriateness of a transfer, but, rather,
the materiality of their anticipated testimony," Charter Oak,
294 F. Supp. 2d at 220-21, the witnesses with the testimony most
essential to this case are those who performed the work on the
King Air – all of whom (both party and non-party) reside and work
in New York.  Additionally, as noted by defendant, a New York-
based witness that has knowledge about the state of the aircraft
prior to the allegedly tortious maintenance was performed is also
crucial to the litigation.  While plaintiff's employees are
located in Connecticut, they have little knowledge of the work
performed by defendant's employees and third-party contractors

while the aircraft was at defendant's facilities in Ballston Spa. Further, plaintiff's claimed non-party witnesses who have information concerning defendant's conduct in Connecticut is necessarily limited to the behavior of defendant's technicians who visited the aircraft in Oxford Connecticut and allegedly removed components from the plane's autopilot (the only conduct of defendant that took place in Connecticut). This conduct underlies only one of plaintiff's claims, and is thus secondary to the conduct that allegedly damaged the King Air's autopilot system, giving rise to the majority of plaintiff's claims.

Additionally, plaintiff has not shown that litigation in New York will be unreasonably inconvenient or costly. Indeed, by plaintiff's own admission the King Air is at least occasionally (and its website suggests more frequently than that) stationed at an airport in Westchester, New York, thus undermining any claim of unreasonable inconvenience, notwithstanding that plaintiff's corporate offices are located in Connecticut.[2] See Sutton, 114 F. Supp. 2d at 50 (rejecting plaintiff's claim that he would have to hire local counsel and travel to Illinois from Connecticut for court appearances, where plaintiff did not show "that transferring the case to Illinois would be so costly or inconvenient for him that the case should remain [in Connecticut]

_____

[2] The parties do not address their relative means in the briefing, and thus this factor is not considered in the Court's analysis.

despite the factors discussed above that weigh heavily in favor of transfer").

Thus, this factor weighs in favor of transfer.  <u>See</u> <u>id</u>. (transfer appropriate where two non-party witnesses essential to defendant's case were located in Illinois and where "most of the activities at issue in the case took place in Illinois and [defendant's] employees who were involved in those activities reside there").

D.   Ability to Compel Non-Party Witnesses to Testify

As noted above, all of defendant's witnesses, including at least a few important non-party witnesses (technicians at an Ithaca-based aviation facility and a non-party pilot who flew the King Air prior to North American's performing work on it) are located in New York and beyond the subpoena power of this Court. Additionally, apart from plaintiff's own employees,[3] plaintiff only claims non-party witnesses who can testify about defendant's conduct in Connecticut which testimony, while potentially relevant to plaintiff's claim of civil larceny, does not relate to the primary issues in the case.  Further, plaintiff has not identified these claimed witnesses, and thus the Court cannot

---

[3] The factor of ability to compel witness testimony "is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." <u>TM Claims Serv. A/S/O v. KLM Royal Dutch Airlines</u>, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001).

determine whether they would testify willingly or whether a court
in New York would be able to compel their testimony.  Cf. Pitney
Bowes, Inc. v. Nat'l Presort, Inc., 33 F. Supp. 2d 130, 131-32
(D. Conn. 1998) (transfer was not warranted where it was not
clear that identified former employees of the defendant would be
unwilling to testify).  Thus, this factor also weighs in favor of
transfer.

      E.   Access to Sources of Proof

      "Although the location of relevant documents is entitled to
some weight, modern photocopying technology and electronic
storage deprive this issue of practical or legal weight."
Charter Oak, 294 F. Supp. 2d at 221.  Additionally, the relevant
documentary evidence appears to be at best evenly split between
New York and Connecticut – with presumably all documents related
to defendant's work on the King Air at its facilities in Ballston
Spa, New York, documents relevant to third-party mechanics' work
located in Ithaca, New York, and plaintiff's documents related to
the operations and maintenance of the King Air at the corporate
offices in Greenwich Connecticut, with some possibly located at
the Westchester airport out of which the King Air is sometimes
based.  Thus, this factor neither points in favor nor against
transfer.

      F.   Familiarity with Governing Law

      Defendant contends that this factor favors transfer because

13

New York law is applicable to plaintiff's claims.  Plaintiff
claims that this factor is either neutral or counsels against
transfer because federal courts are accustomed to applying the
laws of different states, and "this case does not appear to
involve unique or highly specialized or difficult areas of state
substantive law," except perhaps for the unfair trade practices
claim and the civil larceny claim, which involve Connecticut law.
See Pl. Opp. at 21-22.

    Federal courts apply the choice of law rules of the forum
state.  Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d
Cir. 2003).  Connecticut utilizes the most significant
relationship test as set out in the Restatement (Second)
Conflicts of Laws to determine governing law for both contract
and tort claims.  See Interface Flooring Sys., Inc. v. Aetna Cas.
& Surety Co., 261 Conn. 601, 608 & n.17 (2002); Williams v. State
Farm Mut. Auto. Ins. Co., 229 Conn. 359, 370 (1994).  Section
6(2) of the Restatement, "which is applicable to all substantive
areas," sets forth the following "overarching considerations in
determining which state has the 'most significant relationship'":

> (a) the needs of the interstate and international
> systems, (b) the relevant policies of the forum, (c)
> the relevant policies of other interested states and
> the relative interests of those states in the
> determination of the particular issue, (d) the
> protection of justified expectations, (e) the basic
> policies underlying the particular field of law, (f)
> certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the
> law to be applied.

Interface Flooring, 261 Conn. at 205 (citing Restatement).

For contract-based claims, a court considers: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement 2d Conflicts of Laws § 188(2).  Additionally "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied."  Id. § 188(3).  Here, the contract was effectively negotiated by facsimile between defendant in New York and plaintiff in Connecticut.  The "place of contracting" is arguably Connecticut because that is where plaintiff accepted the quote by signing on the "customer acceptance" line,[4] notwithstanding that plaintiff later had a deposit wired to defendant in New York, because the quote does not state that the contract is conditioned upon receipt of the deposit, but only that equipment will not be ordered until the deposit has been received, see [Doc. # 38-2].  The place of performance was New York, because defendant was to work on the King Air at its facilities in New York and plaintiff delivered the aircraft to

---

[4] United Techs. Corp. v. Am. Home Assurance Co., 989 F. Supp. 128, 135-36 (D. Conn. 1997) ("Under Connecticut law, a contract is deemed to have been made where the last act is done which is necessary to create an effective agreement between the parties.").

that location.  Additionally, while the aircraft is registered
with a Connecticut address (BRMS's corporate office in
Greenwich), it is at least occasionally based in New York.  Thus,
these factors are split fairly evenly between New York and
Connecticut.  However, applying § 188(3), because the contract
was both at least partially negotiated by defendant in New York,
and because the contract was to be performed in New York, the
Restatement weighs slightly in favor of application of New York
law to the contract-based claims (Counts I-III).

As to the tort claims (Counts IV-VII), Section 145 of the
Restatement provides that the Court should consider: "(a) the
place where the injury occurred, (b) the place where the conduct
causing the injury occurred, (c) the domicile, residence,
nationality, place of incorporation and place of business of the
parties, and (d) the place where the relationship, if any,
between the parties is centered."  Here, the domicile and
residence of the parties is evenly split between Connecticut and
New York.  The allegedly tortious conduct – claimed negligence,
fraud, civil larceny, and CUTPA violations – is also split.  The
claimed negligence took place in Ballston Spa where defendant was
to perform its maintenance on the King Air; likewise, allegedly
fraudulent statements to plaintiff were made by defendant in New

16

York.[5]  The purported civil larceny took place in Connecticut
where defendant allegedly stole components from the King Air and
took them back to New York.  The allegedly unfair trade practices
presumably took place largely in New York, where defendant was
operating.[6]  The claimed injuries, however, are more centered in
Connecticut where plaintiff is located, although possibly partly
in New York where the King Air itself is occasionally based.[7]
The parties' relationship is arguably located in Connecticut,
where plaintiff executed the contract.

Thus, the choice of law analysis is a close one, with the
analysis favoring application of New York law to the contract-
based claims and Connecticut law to the tort claims.  However,
because all other factors are neutral or favor transfer, and
because choice of law does not conclusively favor Connecticut,
the Court need not ultimately resolve these issues and leaves

------

[5] Defendant also moves to dismiss plaintiff's fraud claim
for failure to plead with specificity as required by Fed. R. Civ.
P. 9(b).  However, because the Court transfers this case to the
Northern District of New York, it does not reach defendant's
dismissal arguments.

[6] The Court notes its skepticism of the success of
plaintiff's CUTPA claim given that the majority of conduct
presumably underlying plaintiff's claim (although not entirely
clear from the Complaint) took place in New York.  See Victor G.
Reiling Assocs. v. Fisher-Price, Inc., 406 F. Supp. 2d 175, 199-
201 (D. Conn. 2005) (dismissing CUTPA claim for lack of
connection with Connecticut).

[7] A "tort is deemed to have occurred where the injury was
sustained."  Uniroyal Chem. Co. v. Drexel Chem. Co., 931 F. Supp.
132, 140 (D. Conn. 1996).

17

that decision to the court to whom this case will be transferred, particularly given that "[f]ederal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State" and thus this factor is not controlling in any event.  Pitney Bowes, 33 F. Supp. 2d at 132

        G.   Interest of Justice

    "The 'interest of justice' is a separate component of the Court's § 1404(a) transfer analysis . . . and may be determinative in a particular case." TM Claims Serv., 143 F. Supp. 2d at 407 (quotation omitted).  "The interests of justice are based on the totality of the circumstances." Id.  Here, as detailed above, the locus of operative facts in this case, i.e. where the conduct allegedly damaging the King Air's autopilot occurred, is in New York.  Additionally, while this action has some connection to Connecticut because plaintiff resides here and some of the claimed tortious conduct occurred here, Connecticut does not have a particular interest in the outcome of this case sufficient to outweigh the other factors discussed above which conclusively favor transfer.  Further, both New York and Connecticut federal courts have crowded dockets, and thus efficient allocation of judicial resources does not necessarily point in either direction.  Thus, given that the lion's share of the § 1404(a) factors favor transfer, and considering the totality of the circumstances, the Court will transfer this case

18

to the Northern District of New York.

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's Motion [Doc. # 29] to transfer this case to the Northern District of New York, and thus DENIES the Motion to dismiss for lack of personal jurisdiction.[8]  The Clerk is directed to transfer this case to the Northern District of New York.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 12th day of May, 2006.**

---

[8] Because the Court grants defendant's motion to transfer venue, it does not reach defendant's motion to dismiss plaintiff's fraud claim.  See, e.g., Pisani v. Staten Island Univ. Hosp., 05civ8189 (WWC), 2006 WL 468311, at *2 (S.D.N.Y. Feb. 27, 2006) (slip op.).

19